UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                       Case No. 17-CR-76

GENE BARRY SCHNEIDER,

    Defendant.

---

## SENTENCING MEMORANDUM

---

Gene Barry Schneider, through counsel, submits the following memorandum in anticipation of his sentencing on Monday, October 2, 2017. Counsel submits the following memorandum in support of a mandatory minimum 15 years sentence being sufficient but not greater than necessary to meet the requirements of 18 U.S.C. § 3553(a).

**I.**    *The Applicable Guideline Range Does Not Properly Reflect Mr. Schneider's Conduct and Personal History.*

By way of letter, counsel submitted objections to the Pre-Sentence Investigation Report (PSR). A copy of that letter is attached to the PSR as an Addendum. Mr. Schneider maintains those objections and the arguments as they are stated in that Addendum.

As many judges across the country have recognized, the guidelines for child pornography crimes suffer from serious flaws. These flaws include a lack of an empirical basis for the guidelines and enhancements that do not properly identify actual aggravating characteristics. Although in most cases these arguments are made for USSG § 2G2.2, the guidelines that apply to possession and distribution of child pornography, some courts have applied a similar analysis to USSG § 2G2.1, the guideline applied here. *See United States v. Price*, 2012 US Dist. Lexis 38397 (C.D. Ill. March 21, 2012).

> ...[T]his court finds that § 2G2.1 presents some of the same problems presented by § 2G2.2. Sections 2G2.1 is simlarly not the product of empirical study by the Sentencing Commission. See Huffstatler, 571 F.3d at 623 ("Perhaps for good reason, the government did not take issue with Huffstatler's premise that the child exploitation guidelines lack an empirical basis. As the Sentencing Commission itself has stated, "[m]much like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offeses." (Citation omitted).

Id. at *33. The *Price* court continued stating:

> ...Additionally, Section 2G2.1 similarly applies enhancements present in nearly every production case....These enhancement skew offense levels upward such that the Guideline does not apporpriately distinguish between the least culpable and most culpable offenders. *See United States v. Jacob*, 631 F.Supp. 2d 1099 (N.D. Iowa 2009)(rejecting § 2G2.1 on policy grounds, finding that § 2G2.1 has some of the same flaws that the court found warranted categorical rejection of § 2G2.2.).

Id at *34.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Mr. Schneider receives a 2 level enhancement for commission of a sexual act or sexual conduct. That definition applies in basically every case involving child exploitation, even where as here, Mr. Schneider did not engage in the conduct himself. Mr. Schneider also receives a 2 level enhancement for use of a computer and the internet. With technology advances, it is unlikely that this conduct would occur in any other way but through a computer and the internet. Counsel certainly cannot recall a case involving this charge that didn't include the use of a computer or the internet.

Finally, this guideline does nothing to distinguish between those that commit more serious crimes and what Mr. Schneider did here. This guideline section applies to the person who produces child pornography – the person who actually takes photos or video and distributes it as child pornography. This guideline applies to parents who either take photos or images of their own children committing sexual acts or engaging in sexual conduct, or those parents who give permission for their children to be used in photos or videos of the same. And this guideline applies to someone like Mr. Schneider who engaged in chats with teenage girls and asked them to send him images of themselves in sexually inappropriate poses or behavior. Arguably, there is a huge difference between those types of actions, yet the guideline and enhancements that apply would treat all of these the same. For that reason, counsel urges the court to sentence Mr. Schneider below the guideline

calculated in the PSR and impose the joint recommendation of the parties, a minimum mandatory 15 years in custody.

## II. SECTION 3553(a) FACTORS

### A. Nature of the Offense and History and Characteristics of Mr. Kamps

Counsel relies on the description of the offense within the Pre-Sentence Investigation Report (PSR). This case does not involve Mr. Schneider distributing images/videos he received from teenage girls. Nor does this case involve Mr. Schneider threatening these teenage girls in some manner to obtain images/videos of themselves engaging in sexual conduct. Most significantly, this case does not involve physical contact between Mr. Schneider and an underage person. If it did, Mr. Schneider would likely be facing a lot less time. In fact, if Mr. Schneider had eventually met up with an underage person to have sex, as long as the person was over 12 years of age and there was no violence involved, no mandatory minimum would apply.

Mr. Schneider is 52 years old and this is not his first time in trouble with the law. However he has not had any new arrests since being released from state prison in 1999, more than 17 years ago. He also had no revocations of his supervision and discharged successfully from it in 2005. PSR at ¶ 59. He has a very close relationship with his family, especially his mom and dad. He has been living with them in Albany, Wisconsin, for the past six years. He is single and has no children but is a

loving Uncle to his siblings' children. He has always worked and most recently, had been working as an Assistant Supervisor at Colony Brands where he has been employed since November of 2010. PSR at ¶ 94.

A statement from Mr. Schneider himself, as well as letters from his family and friends are attached. Within Mr. Schneider's statement, he describes how difficult it has been for him to interact with women, especially since his release from prison. Aside from working, Mr. Schneider spent significant time on the computer, chatting and texting not only underage girls, but women as well. For Mr. Schneider, it was much easier to engage in communication with women and girls through the computer, rather than in person. As he articulates in his statement, after his release from prison he found very few women that would want to be with him.

For Mr. Schneider, that feeling as though he didn't connect with other is nothing new. In the PSR, Mr. Schneider's parents spoke of him being somewhat isolated in school, being teased and bullied by other children. PSR at ¶ 75. After being release from prison, Mr. Schneider really spent most f his time with family. Those letters from family describe him as a helpful, giving person who is very involved with his family. Because he was so good with his family and always there for them, his family members are shocked by what Mr. Schneider did in this case. Although many have remained supportive, what he did has caused a great strain on his relationship with them. PSR at ¶ 77. Mr. Schneider is hopeful that over time,

he will be able to rebuild those relationships with his family as it is his hope to be there for them upon his release from prison.

Finally, in Mr. Schneider's statement he spoke of the sexual abuse he suffered from at the hands of his older male cousin. This began when Mr. Schneider was 12 years old and continued for the next three years. His family did not find out about it until he was in his later teens and because it involved family, they chose not to report it to law enforcement. To this day, Mr. Schneider's parents question if this contributed to his problems in school and thereafter, the criminal behavior he engaged in during his twenties. PSR at ¶ 75.

More significantly, Mr. Schneider, as well as his parents, believe this may have had some influence on his criminal behavior at issue here. Mr. Schneider, as well as his parents, are hopeful that through treatment and programming in prison, he will be able to come to terms with what happened to him as a young adolescent boy and shape his thinking for the future so that he never does anything like this again. PSR at ¶ 76.

Mr. Schneider is sorry for the pain he has caused so many, including the victims of his offense. He also realizes he has caused his family a lot of pain, embarrassment, and shame. He hopes he will have the chance to make it up to them upon his release and has a lot of sadness that he will not be there when his parents

need him most as both are in their late 70's and have begun to suffer from significant health problems.

B.  **Policy Considerations**

The offense is indeed serious and the statutory penalty structure in and of itself recognizes the seriousness of the offense, and a sentence at the mandatory minimum by law meets Congress' determination of seriousness. The converse, of course, is that the sentence should not reflect the seriousness of any crime that the defendant did not commit. Fairly obviously, Mr. Schneider is not before the court having been convicted of an assaultive crime or a hands on offense. The sentence here, therefore, should encompass the seriousness of this offense and not other offenses within the same overarching label of a sex offense, like a producer or hands-on offender. Significantly, the government also agrees that the 15 year mandatory minimum sentence for Mr. Schneider adequately addresses the seriousness of the offense.

Although punishment is necessary, it is clear treatment is as well. A sentence of 15 years is sufficient punishment for Mr. Schneider in terms of what he did here. As noted in *Gall v. United States* by the district court in that case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in the offense." 128 S. Ct. 586,

599 (2007). A within-guideline sentence in this case would promote such derision. Fifteen years correctly reflects the serious nature of this offense.

Adequate deterrence as to Mr. Schneider is achieved by this lengthy term of incarceration, as well as the fact that he will have a minimum of five years on supervised release. Following that, Mr. Schneider will still have to register as a sex offender, a status that impacts where he can reside, as well as requiring constant updating as to his address, employment, and appearance. Mr. Schneider completely understands the severity of his actions and is remorseful. Treatment is necessary, and as Mr. Schneider did well on state supervision after his last release from prison, that suggests he will likely do fine on supervised release after he completes his lengthy term of incarceration in this matter. That combination of 15 years of imprisonment to be followed by at least 5 years of supervised release where he can go back to prison if he doesn't follow through on the conditions of his release, is likely to be highly effective in deterring Mr. Schneider from re-offending in the future.

As for general deterrence, it is a more difficult concept to address, especially when it comes to this type of offense. Depressingly so and as this court understands all too well, there is a world wide market for child pornography which involves the sexual exploitation of children. And as the court has even acknowledged, ours is a society that has become essentially obsessed with sex. One

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

cannot turn on a television or open a magazine or play a video game without being completely overwhelmed with messages or images that are of a sexual nature. So one questions whether there is any sentence that would have the desired general deterrent effect on such a market. A 15 year sentence will deter those that are going to be deterred so any sentence above that is doing little to increase the deterrent value of sentencing.

This is a case where protection of the public is an issue. To protect the public from Mr. Schneider essentially means stopping him from this type of behavior or worse behavior in the future. Even with the minimum mandatory sentence of 15 years, the sentence both parties are recommending here, Mr. Schneider will not come out of custody until he is in his mid to late 60's. At that age, Mr. Schneider's risk to cause harm to the public is substantially decreased. And Mr. Schneider is more than amenable to treatment and supervision. With the court having the authority to sentence Mr. Schneider to a lengthy term of supervised release as well as the fact that he will be required to register as a sex offender, any further protection of the community can be achieved through these methods and collateral consequences.

## III.  CONCLUSION

The minimum mandatory 15 years sentence is what the government and Mr. Schneider contemplated and agreed to in the plea agreement. There can be little to

no doubt that a minimum mandatory sentence of 15 years is sufficient but not greater than necessary to meet all the purposes of sentencing. For all the above reasons, the court should sentence Mr. Schneider to 15 years imprisonment followed by a significant period of supervised release. Further, Mr. Schneider asks the court to recommend to the Bureau of Prisons a placement at an institution as close to his home in Southern Wisconsin as possible so that his elderly parents and other family members can trave to have regular contact with him.

Dated at Green Bay, Wisconsin, this 29th day of September, 2017.

Respectfully submitted,

**s / Krista Halla-Valdes**
Krista Halla-Valdes, Florida Bar #0073369
Attorney for Gene Barry Schneider
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301
Tel: 920-430-9900
Fax: 920-430-9901
krista_halla-valdes@fd.org

N:\Cases-Open\S-T\Schneider, Gene - 17-080\Sentencing\Sentencing Memo FINAL.wpd